# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Rodney Bristol, 247872,

              Petitioner,        Case No. 17-13149

v.

                                    Judith E. Levy
                                    United States District Judge
Thomas Winn,

                                    Mag. Judge Anthony P. Patti
            Respondent.

_____/

# OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS

Rodney Bristol, a Michigan prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges state trial conviction of armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, carrying a concealed weapon ("CCW"), Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp. Laws § 750.227b. He was sentenced to eleven to twenty years for the armed robbery conviction, two to five years for the felon-in-possession

and CCW convictions, and a consecutive five years for the felony-firearm conviction.

His petition raises three claims: (1) the prosecutor committed misconduct during the state's rebuttal argument, (2) petitioner's sentence for the CCW conviction was erroneously imposed to run consecutively with his sentence for the felony-firearm conviction, and (3) the trial court erroneously scored the state sentencing guidelines.

## I. Background

Petitioner's convictions stem from the robbery of Yukima Everett on October 22, 2013, in the parking lot of a party store in Detroit. (Dkt. 8-5 at 24:7–12, 48.) At trial, a video from the store's surveillance camera was played for the jury. (*Id.* at 44–45.) The video showed a van pulling into the parking lot of the store (*id.* at 50:21), later identified as a white van with turquoise or blue lines. (*Id.* at 106:24.) Eventually, a car parked near the van, its driver went into the store, and when the driver returned to her car, the video showed one of the van's occupants interacting with her. (Dkt. 8-5 at 63–65.)

Two witnesses explained what the video captured. First, Ahmad Awada testified that he was parked in the lot at time of the robbery, and

he was watching the van and a man lingering at the side of the van because it "didn't seem normal." (*See id.* at 108.) He also stated that the man spoke to someone else who remained in inside the van. (Dkt. 8-5 at 107–08.) Then, Awada saw the man standing outside of the van approach a woman by her parked car, who looked tense, and the man held something to her head. (*Id.* at 113.) Awada saw the man take her purse, and the woman take off her rings and give them to him. (*Id.* at 114.) Awada called 9-1-1 to report the incident, and Awada subsequently gave a statement to police. (*Id.* at 110-20, 115-17–22.)

Then, Everett testified. She stated that as she returned to her car in the parking lot, the man stood between her and the door of her car. (*Id.* at 146–47.) The man, who Everett latter identified as co-defendant Daveon Henry, demanded Everett's purse and rings while holding a gun to her head, and she gave it to him. (*Id.* at 147, 149.) She also removed her rings and gave them to Henry. (*Id.* at 149.) Everett testified that she saw the van in the parking lot, and when police later arrived, she gave a description of Henry (*Id.* at 150, 154–55.) Two days later, she identified Henry in a photographic lineup (Dkt. 8-8 at 45-6–9.) and at trial. (Dkt. 8-5 at 147.)

3

Detroit Police Officer James Taylor testified that he and his partner received a description of the van associated with the robbery, of Henry, and the driver with headphones and a backpack. (Dkt. 8-6 at 112–13, 115–16.). He pulled over a van matching the description at about 9:30 p.m. that night—thirty minutes after the robbery. (*Id.* at 113.) Keith Marzette, an older man who did not match the description of either perpetrator, was driving the van. (*Id.* at 114–16.) Taylor found Everett's two sets of identification in the van. (*Id.* at 116.) Ultimately, Everett's credit card and ring were also recovered from the van. (*Id.* at 152.) Marzette told Taylor that he had loaned the van to petitioner and Henry earlier that evening. (*Id.* at 117.) He told the officers that petitioner and Henry were still at his house, and he gave officers permission to search it. (*Id.* at 121–23.) When Taylor and his partner entered Marzette's home, they found petitioner wearing a medical device, an E.K.G. machine, on his head that looked similar to headphones. (*Id.* at 123.) Henry was also at the house, and officers recovered a .22 caliber handgun that he appeared to drop as the officers entered the house. (*Id.* at 130–31.)

Petitioner gave a statement to police; he stated that he argued with Henry, planned to drive away, but ultimately turned around to pick him

4

up. (Dkt. 8-8 at 89.) He admitted that he was driving the van with Henry on the evening of he offense, but he claimed that he did not know that Henry planned on committing a robbery, and he had nothing to do with any robbery. (*Id.* at 89–90.)

The prosecutor argued that petitioner was guilty because he served as the getaway driver under an aiding and abetting theory. (*See* 8-9 at 67, 75.) The jury convicted petitioner on all counts. (Dkt. 8-11 at 22.) He was sentenced to eleven to twenty years imprisonment for the armed robbery conviction, two to five years imprisonment for the felon-in-possession and CCW convictions, and five years imprisonment to be served consecutively for the felony-firearm conviction. *People v. Bristol*, No. 322285, 2015 Mich. App. LEXIS 2130, at *1 (Nov. 15, 2017).

Following sentencing, petitioner filed a claim of appeal in the Michigan Court of Appeals, raising two claims: (1) that the prosecutor improperly shifted the burden of proof to defendant, specifically that the prosecutor "focus[ed] the jury's attention on his failure to testify during her closing rebuttal argument" and (2) that his sentence should be corrected so that his felony-firearm sentence is served concurrently, not consecutively, with his CCW sentence. *Bristol*, 2015 Mich. App. LEXIS

2130, at *2–4. The Michigan Court of Appeals affirmed petitioner's convictions, but granted relief as to the second claim. *Id.* at *1, 4. It remanded the case to amend the judgment "for the ministerial task of amending the judgment of sentence to indicate that the felony-firearm and CCW sentences are to be served concurrently." *Id.* at 3–4. The state trial court amended the judgment on July 26, 2016. (Dkt. 9.)

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. *People v. Bristol*, 499 Mich. 964 (2016) (Table). The application also included a third claim:

> The defendant is entitled to resentencing because the trial court erred by scoring OV 1 at 15 points when there was no evidence to support the scoring of those variables; these errors resulted in the use of an inaccurate sentencing guidelines range. In violation of his state and federal right to due process.

(Dkt. 1 at 3.) The Michigan Supreme Court remanded petitioner's case to the trial court "to determine whether the court would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 498 Mich. 358 (Mich. 2015)," but otherwise denied the application for leave to appeal. *People v. Bristol*, 499 Mich. 964 (2016) (Table). On remand, the state trial court held that it would have imposed the same sentence. (Dkt. 1 at 20.)

Petitioner filed his § 2254 petition on September 25, 2017. (Dkt. 1.) He raises three claims, the first two of which he raised in the Michigan Court of Appeals and the Michigan Supreme Court, and the last of which he raised for the first time with the Michigan Supreme Court. (*Id.* at 5–11.) The government was ordered to respond (Dkt. 4), and it did. (Dkt. 7.)

## II. **Legal Standard**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits the authority of a district court to grant habeas relief on a claim that was adjudicated on the merits by the state courts. *See* § 2254(d). A § 2254 petition may only be granted if the state court adjudication was "contrary to" or resulted in an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). A state court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). And a state court decision is an "unreasonable application of clearly

7

established" law "where 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the case.'" *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018) (quoting *Williams*, 529 U.S. at 413).

An "unreasonable application" is more than incorrect; it must be "objectively unreasonable," *id.* at 768 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)), meaning "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement," *id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). A § 2254 petition should be denied if it is within the "realm of possibility" that fair-minded jurists could find the state court decision was reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

### III. <u>Analysis</u>

#### A. Prosecutorial Misconduct

Petitioner's first claim asserts that the prosecutor committed misconduct during her closing rebuttal by making a burden-shifting argument. It is well-settled that a prosecutor may not shift the burden of proof to the defendant, *see United States v. Brown*, 367 F.3d 549, 556 (6th

8

Cir. 2004) (citing *Patterson v. New York*, 432 U.S. 197, 215 (1977)), or imply that the defendant "ha[s] the burden of proof or any obligation to produce evidence to prove his innocence." *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (alteration in original) (quoting *United States v. Clark*, 982 F.2d 965, 968–69 (6th Cir. 1993)). Nonetheless, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). And "[t]he prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)).

This standard is even more deferential on habeas review. *See Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) ("Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair."). "On habeas review, 'the relevant question is whether the prosecutor's comments "so infected the trial with *unfairness* as to make the conviction a denial of due process."'" *Lundgren*

*v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (alteration in original) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). And thus, petitioner's burden is "quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). Petitioner does not meet it here.

Here, defense counsel asserted in his closing argument that there was no proof that petitioner was in the van with Henry at the time of the robbery. (*E.g.*, Dkt. 8-9 at 139–141.) He suggested that the robbery was committed by Marzette and another man who were in the van when it was pulled over by the police. (*E.g.*, *id.* at 144–46.) Defense counsel then attempted to reconcile this theory with petitioner's statement to police by suggesting that petitioner was with Henry in the van at a different time and at a different store—and that this other event was what he was describing in his statement. (*Id.* at 158–62.)

In rebuttal, the prosecutor attacked this theory by noting that petitioner answered the officer's introductory open-ended question about whether he knew why he was being questioned by stating, "Man, I didn't rob nobody." (*Id.* at 163–70.) The prosecutor then recounted the details of petitioner's statement as being consistent with the eyewitness testimony and video evidence of the robbery. (*Id.*) For example, she argued that

Awada's testimony that the van pulled around during the robbery and appeared to pick up the perpetrator was consistent with petitioner's statement that he argued with Henry and planned to drive away, but ultimately picked Henry up before leaving. (*Id.* at 167.) The prosecutor suggested the similarities were too significant to support defense counsel's theory that petitioner's statement was describing a different event occurring at a different time and that it did not explain Bristol's statement to the police. (*Id.*)

The prosecutor also argued before the jury and the state trial court, in response to defense counsel's objections:

> If Defense wants you to think, the Prosecution can't tell you who was in the van. No, I wasn't in it. . . . But neither did Mr. Bristol . . . indicate who else was in it besides him . . . and Devon henry. That is the statement that it is in evidence. And the jury is allowed to look at it, and make its own decision with respect to that testimony, your Honor.

(*Id.* at 167–68.) Here, the prosecutor did not shift the burden to petitioner to prove his own innocence. Rather, she fairly responded to the defense's theory that the prosecution had not offered any affirmative evidence of Bristol's guilt and that the defense had to prove a negative, that Bristol was not in the car. (*Id.* at 64.) This is not contrary to clearly established law nor an unreasonable application of federal law that so infected the

11

trial with unfairness that petitioner was denied due process. Therefore, habeas relief is not warranted on this claim.[1]

**B. CCW Sentence**

Petitioner argues that his CCW sentence was erroneously imposed to run consecutively to his felony-firearm sentence. The Michigan Court of Appeals agreed and remanded the case for correction of the sentence, and the record indicates that the sentence was amended as directed. The claim is therefore moot, and no habeas relief can be granted.

**C. Sentencing Guidelines**

Last, petitioner claims that the state sentencing guidelines were incorrectly scored by the trial court, specifically that he was erroneously scored points for pointing a firearm at a victim. Whether the sentencing guidelines were correctly scored under state law does not present a cognizable claim in this action. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007). Errors in the application of state sentencing

---

[1] Furthermore, the trial court instructed the jurors that the prosecutor must prove every element and that "defendant is not required to prove his innocence, or to do anything." (*Id.* at 172–73.) Accordingly, even if the prosecution's argument was open to a different interpretation, any potential prejudice was cured by the trial court's instructions on the burden of proof. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (holding that "juries are presumed to follow their instructions").

guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016).

To the extent petitioner asserts that the scoring of the sentencing guidelines violated his jury trial rights under *Alleyne v. United States*, 570 U.S. 99, 103 (2013), any error was cured by the Michigan Supreme Court's order remanding petitioner's case for a determination of whether such error occurred under *People v. Lockridge*, which held that Michigan's sentencing guidelines violated the Sixth Amendment when it applied *Alleyne*. 498 Mich. 358, 379 (2015). Therefore, petitioner does not show that the scoring under the state sentencing regime was contrary to or an unreasonable applicable of federal law, and he is not entitled to habeas relief.

### D. Certificate of Appealability

To appeal this decision, petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's

assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). The Court concludes that jurists of reason would not debate the Court's decision on any of petitioner's claims. A certificate of appealability is denied, as is permission to appeal in forma pauperis because an appeal of this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## IV. Conclusion

Accordingly, the Court **DENIES** the petition for a writ of habeas corpus (Dkt. 1), **DENIES** a certificate of appealability, and **DENIES** permission to appeal in forma pauperis.

IT IS SO ORDERED.

Dated: March 18, 2019  
Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2019.

s/Shawna Burns  
SHAWNA BURNS  
Case Manager